UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| SECURITIES AND EXCHANGE | ) | |
|---|---|---|
| COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07CV379 RWS |
| | ) | |
| MATTHEW KOPSKY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

The Securities and Exchange Commission brought this insider trading action against defendants Ronald W. Davis and Matthew E. Kopsky, alleging violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. The SEC moves in limine to exclude from evidence the February 20, 2006 report of Davis' polygraph, the expert testimony of John Long about the polygraph, and any mention of Davis' polygraph examination. I will grant the SEC's motion and exclude Davis' polygraph evidence as inadmissible under Federal Rules of Evidence 702 and 403.

## Background

To establish that Davis engaged in insider trading as alleged in this action, the SEC needs to prove that he knowingly disclosed material, nonpublic

information to his broker Matthew Kopsky, the other defendant in the case. Davis disputes this element of the case, relying in part on the results of a polygraph examination. The polygraph examination was administered on February 16, 2006, three years after the alleged insider trading took place and before this action was filed. The examination was conducted by John Long, a retired FBI polygraph examiner, in the defense counsel's office. Long used the control question technique, a method used most often by polygraph examiners. See United States v. Cordoba, 194 F.3d 1053, 1057 (9th Cir. 1999) (explaining the theoretical underpinning of the method). According to the report generated by examiner Long, Davis was truthful in answering the following questions:

> 1) Q: Did you ever knowingly provide Mr. Kopsky with material non-public information?
>
> A: No.
>
> 2) Q: Did you know that Mr. Kopsky was trading ESSI stock at all in 2003?
>
> A: No.
>
> 3) Q: When you forwarded an email to Mr. Kopsky referencing Tamsco, did you believe that he had prior knowledge of the pending Tamsco acquisition?
>
> A: Yes.
>
> 4) Q: Other than the Sedotti Analysis and Report and the reference to

>the Tamsco acquisition did you believe that you ever forwarded other material non-public information in the email you forwarded?
>
>A: No.

Ex. A at 2.

The polygraph exam was not stipulated by the parties to this case. Instead, it was arranged by the defense counsel in response to the SEC's investigation of Davis' activities in 2003. The SEC was first notified of the polygraph exam when it received the results from the defendant in 2006. The SEC did not participate in the selection of the examiner, the formulation of the questions, or the administration of the test, and it did not conduct its own polygraph examination of Davis.

## **Legal Standards**

In United States v. Scheffer, 523 U.S. 303 (1998), the United States Supreme Court upheld a military rule of evidence that imposes a per se ban on admitting polygraph evidence in court martial proceedings. In upholding the military rule, the Court indicated a strong disfavor of admitting polygraph evidence for trial purposes. The Court noted that "there is simply no consensus that polygraph evidence is reliable."[1] 523 U.S. at 309. The Court also believed

---

[1] The lack of consensus is exemplified in this case by the studies and surveys submitted by both parties reaching opposite conclusions regarding the reliability and accuracy of polygraph

- 3 -

that exclusion of polygraph evidence does not impair any significant defense interest because a defendant can always testify and submit other factual evidence to bolster his credibility.[2]  Id. at 316-17.

Polygraph evidence is highly disfavored in this circuit.[3]  See United States v. Gill, 513 F.3d 836, 846 (8th Cir. 2008) (refusing to reopen the record to allow testimony regarding polygraph examinations); United States v. Gianakos, 415 F.3d

---

exams.  Defendant seems to believe that because federal agencies have been utilizing polygraph examinations, they must be reliable.  Scheffer dismissed this argument by noting that governmental use of polygraph examinations is "primarily in the field of personnel screening, and to a lesser extent as a tool in criminal and intelligence investigations, but not as evidence at trials . . . .  Such limited, out of court uses of polygraph techniques . . . do not establish the reliability of polygraphs as trial evidence."  523 U.S. at 312 n.8.  The Department of Justice also takes the position that polygraph results should not be used as evidence at trial.  Ortega v. United States, 270 F.3d 540, 548 (8th Cir. 2001) (quoting United States Attorneys' Manual, § 9-13.300.  Polygraphs–Department Policy).

[2]Four Justices also shared the view that polygraph evidence may interfere with the jury's role in making credibility determinations and create collateral litigation over issues not in dispute.  523 U.S. at 313-15.

[3]To support its contention that polygraph evidence has been admitted by the Eighth Circuit, Defendant Davis cited one Eighth Circuit case, Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S.Ry.Co., 312 F.3d 943, 947 (8th Cir. 2002), and two cases from the Eastern District of Missouri, Reasonover v. Washington, 60 F. Supp.2d 937 (E.D. Mo. 1999) and Schlup v. Delo, 912 F. Supp.448 (E.D. Mo. 1995).  Those cases are easily distinguishable from this case.  In Finley Lines, the Eighth Circuit actually upheld a labor arbitrator's decision not to give probative value to polygraph results.  In Reasonover and Schlup, both district courts considered polygraph evidence in ruling on petitions for habeas corpus, but particularly noted that the polygraph was not essential to the decision in either case.  Additionally, in considering habeas petitions, a "district court is not bound by rules of admissibility that would govern at trial."  Schlup v. Delo, 513 U.S. 298, 327 (1995).  Defendant also cited another Eighth Circuit case, Underwood v. Colonial Penn Ins. Co., 888 F.2d 588 (8th Cir. 1989).  That case is irrelevant as it deals with the admissibility of defendant's refusal to take a polygraph test, as opposed to whether the results of a polygraph test are admissible.

912, 925 (upholding exclusion of witnesses' failed polygraph tests from evidence where witnesses and police officer could be cross-examined about witnesses' credibility); United States v. Swayze, 378 F.3d 834, 837 (8th Cir. 2004) (stating that juries, not polygraph tests, should determine credibility); Ortega v. United States, 270 F.3d 540, 548 (8th Cir. 2001) (rejecting use of court-proposed polygraph examination as ground for sentencing enhancement). Polygraph evidence is not *per se* inadmissible in the Eighth Circuit, but is tested for admissibility pursuant to Federal Rules of Evidence 702 and 403. See Gill, 513 F.3d at 846 (polygraph is of limited probative value); United States v. Rouse, 410 F.3d 1005, 1011 (8th Cir. 2005) (affirming district court's Daubert analysis); Gianakos, 415 F.3d at 925 (affirming district court's analysis under Rule 403 and Daubert standard). Cf. Anderson v. United States, 788 F.2d 517, 519 n.1 (8th Cir. 1986) (stating the old *per se* rule that polygraph examination results should not be admitted absent stipulation).

Rule 702 provides that for expert opinion to be admissible, it must be "scientific, technical, or other specialized knowledge" that "will assist the trier of fact to understand the evidence or to determine a fact in issue." This means the expert opinion must be both reliable and relevant. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993). Under Daubert, trial judges

are charged with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. Id. at 593. To determine whether the expert testimony meets this threshold, courts may consider:

> 1) whether the expert's technique or theory can be or has been tested;
>
> 2) whether the technique or theory has been subject to peer review and publication;
>
> 3) the known or potential rate of error of the technique or theory when applied;
>
> 4) the existence and maintenance of standards and controls; and
>
> 5) whether the technique or theory has been generally accepted in the scientific community.

Id. at 593-94. Rule 702 further directs trial courts to "scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case."

Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

I find Davis' polygraph evidence inadmissible under Rules 702 and 403.

## Analysis

*The Polygraph Evidence Is Not Admissible Under Fed. R. Evid. 702*

For purposes of determining whether Davis' polygraph evidence meets the foundation requirements in Rule 702, I will assume without deciding that examiner Long is qualified as an expert in this case. Davis, as proponent of the evidence, has the burden of establishing the foundation under Daubert by a preponderance of evidence. See Bourjaily v. United States, 483 U.S. 171 (1987).

After considering the studies and surveys filed by the SEC and Davis, I find the control question technique applied by examiner Long has been subjected to scientific tests and peer review, thereby satisfying the first two factors listed in Daubert. However, Davis fails to satisfy the remaining Daubert factors.

There is not a known or potential rate of error of the polygraph technique applied by examiner Long. Even though Defendant claimed that the control question technique has a known error rate of 10% or lower, I find the rate of error actually subject to much dispute. See Scheffer, 523 U.S. at 310 (citing study suggesting the accuracy rate of the control question technique is little better than "the toss of a coin," or 50 percent). The SEC also submitted a study by Congress which evaluated all then-available studies on the reliability of polygraph tests and concluded the error rates of polygraph tests could be significant. See U.S.

## Analysis

*The Polygraph Evidence Is Not Admissible Under Fed. R. Evid. 702*

For purposes of determining whether Davis' polygraph evidence meets the foundation requirements in Rule 702, I will assume without deciding that examiner Long is qualified as an expert in this case. Davis, as proponent of the evidence, has the burden of establishing the foundation under Daubert by a preponderance of evidence. See Bourjaily v. United States, 483 U.S. 171 (1987).

After considering the studies and surveys filed by the SEC and Davis, I find the control question technique applied by examiner Long has been subjected to scientific tests and peer review, thereby satisfying the first two factors listed in Daubert. However, Davis fails to satisfy the remaining Daubert factors.

There is not a known or potential rate of error of the polygraph technique applied by examiner Long. Even though Defendant claimed that the control question technique has a known error rate of 10% or lower, I find the rate of error actually subject to much dispute. See Scheffer, 523 U.S. at 310 (citing study suggesting the accuracy rate of the control question technique is little better than "the toss of a coin," or 50 percent). The SEC also submitted a study by Congress which evaluated all then-available studies on the reliability of polygraph tests and concluded the error rates of polygraph tests could be significant. See U.S.

## Analysis

*The Polygraph Evidence Is Not Admissible Under Fed. R. Evid. 702*

For purposes of determining whether Davis' polygraph evidence meets the foundation requirements in Rule 702, I will assume without deciding that examiner Long is qualified as an expert in this case. Davis, as proponent of the evidence, has the burden of establishing the foundation under Daubert by a preponderance of evidence. See Bourjaily v. United States, 483 U.S. 171 (1987).

After considering the studies and surveys filed by the SEC and Davis, I find the control question technique applied by examiner Long has been subjected to scientific tests and peer review, thereby satisfying the first two factors listed in Daubert. However, Davis fails to satisfy the remaining Daubert factors.

There is not a known or potential rate of error of the polygraph technique applied by examiner Long. Even though Defendant claimed that the control question technique has a known error rate of 10% or lower, I find the rate of error actually subject to much dispute. See Scheffer, 523 U.S. at 310 (citing study suggesting the accuracy rate of the control question technique is little better than "the toss of a coin," or 50 percent). The SEC also submitted a study by Congress which evaluated all then-available studies on the reliability of polygraph tests and concluded the error rates of polygraph tests could be significant. See U.S.

Congress Office of Technology Assessment, <u>Scientific Validity of Polygraph Testing: A Research Review and Evaluation-A Technical Memorandum</u> 5 (1983).

Defendant fails to show the existence of controlling standards for administering polygraph examinations, which are necessary because an examinee can adopt countermeasures or strategies to suppress physiological responses and cause inconclusive readings by the polygraph machines and the examiner. <u>See</u> <u>Scheffer</u>, 523 U.S. at 310 n.6. Moreover, there is no general acceptance of polygraph techniques. "[T]he scientific community remains extremely polarized about the reliability of polygraph techniques." <u>Scheffer</u>, 523 U.S. at 309. The studies submitted or cited by defendant do not sufficiently indicate there has been any change to the lack of consensus in the scientific community regarding the acceptance of polygraph techniques.

Even more disturbing in this case is the number of defects in the administration of Davis' polygraph that strongly suggest a failure to follow appropriate implementation methods and standards. The SEC's expert testified that Davis' polygraph results are inconclusive and unreliable because of the following defects: 1) two of the four relevant questions asked in the polygraph are poorly designed and vague; 2) the chart tracings from the polygraph are inadequate and were improperly marked by examiner Long by hand, especially in

portions of Davis' answers which show significant upwards movement, which indicate an emotional response; 3) examiner Long did not revise the relevant questions supplied to him by defense counsel so as to eliminate the possibility of Davis' rehearsing the questions; and 4) examiner Long failed to ask Davis about his last use of prescription medications.[4] After examining the principles and methodology used, Long's application of the polygraph technique in this case raises enough red flags of potential misapplication and abuse of the technique to render the results highly unreliable. For these reasons, the evidence must be excluded. See Fed. R. Evid. 702; Daubert, 509 U.S. at 592-93.

*The Polygraph Evidence is Inadmissible under Fed. R. Evid. 403*

Federal Rule of Evidence 403 calls for a trial court to balance the probative value of and need for the evidence against potential risks attending the admission of such evidence. When the issues of unreliability inherent in all polygraph tests are combined with the specific problems that permeated this polygraph test, I have serious doubts about the probative value of the polygraph evidence in this case. First, as discussed above, the administration of the polygraph exam contains serious flaws that render it unreliable. Second, the polygraph was administered *ex*

---

[4]According to a letter sent by Davis' counsel to Long, Davis was at the time of the polygraph taking six medications, including medications that reduce anxiety.

*parte* without prior notification to or participation by the SEC. As a result, Davis did not have to be concerned with negative consequences for failing the exam, nor did he have to worry about being countered with any questions formulated by the SEC. See United States v. Thomas, 167 F.3d 299, 309 (6th Cir. 1999) (probative value of unilateral polygraph exam is substantially less because defendant had no adverse interest at stake in taking the exam); United States v. Ross, 412 F.3d 771, 773 (7th Cir. 2005) (privately-commissioned, eleventh hour polygraph conducted without notice to the government is unreliable because it carries no negative consequences and "probably won't see the light of day if a defendant flunks); United States v. Gilliard , 133 F.3d 809, 816 (11th Cir. 1998) (the unilateral nature of the polygraph hindered the government's ability to cross examine the polygrapher and to have its own experts conduct an independent review of the results). Third, the polygraph examination asked about activities that happened three years earlier. Davis' state of mind and credibility at the time of the polygraph exam may not provide any insight into his state of mind at the time the alleged disclosure took place.

Finally, admitting the polygraph evidence is likely to distract the jury from its role as the sole fact finder and judge of credibility. The jury may be misled by the notion that polygraph examinations must necessarily have scientific basis and

give excessive weight to the polygraph results in determining Davis' credibility, even though that determination rests solely with the jury. For these reasons, the evidence must be excluded. See Fed. R. Evid. 403.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff SEC's motion to exclude polygraph evidence [#99] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 18th day of November, 2008.